28 A.3d 785

Kelly SWARTZBAUGH, et al.

v.

ENCOMPASS INSURANCE COMPANY OF AMERICA.

No. 946, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Sept. 7, 2011.

**136**

Franklin J. Muher (Glusing & Muher, on the brief), Baltimore, MD, for appellant.

Ronald W. Cox (Amy L. Leone, McCarthy Wilson LLP, on the brief), Rockville, MD, for appellee.

Panel: MEREDITH, WOODWARD and GRAEFF, JJ.

WOODWARD, J.

Appellants, Kenneth, Lynne, and Kelly Swartzbaugh,[1] challenge the Circuit Court for Carroll County's entry of a declar-

---

1. To avoid confusion, we shall refer to appellants by their first names. Also, in the Swartzbaughs' first amended complaint, Lynne Swartzbaugh was referred to as "Gale Lynne Swartzbaugh (hereinafter referred to as 'Lynne Swartzbaugh')." The Swartzbaughs then filed a Consent Line to Amend by Interlineation in which they amended Lynne's name to "Gale Lynn Seipp." We also note that in the parties' Agreed Statement of Facts, the parties refer to Lynn as "Lynne Swartzbaugh (now Sieppe)." The Swartzbaughs' brief before this Court refers to Lynne as "Lynne." For consistency, we will refer to her as "Lynne."

atory judgment on behalf of appellee, Encompass Insurance Company of America ("Encompass"). In obtaining personal automobile insurance for her family, Lynne signed a Waiver of uninsured motorist benefits [2] that otherwise would have been in the same amount as the liability coverage under the policy. After Kelly—who is the daughter of Kenneth and Lynne—was involved in an automobile accident with an underinsured motorist, the Swartzbaughs brought a declaratory judgment action against Encompass, requesting the trial court to rule that Encompass was legally obligated to provide uninsured motorist benefits equal to their liability coverage, because the Waiver signed by Lynne was invalid. The trial court, however, determined that the Waiver was valid and enforceable and that the Swartzbaughs were not entitled to uninsured motorist benefits in addition to the amount provided in their policy. Accordingly, the court granted summary judgment for Encompass and entered a declaratory judgment consistent with that ruling. The Swartzbaughs filed a timely notice of appeal to this Court.

This appeal presents one question for review by this Court, which we have stated as: Did the circuit court err by holding that the Waiver signed by the second of the two insureds listed on a policy of motor vehicle insurance satisfied the requirement of Maryland Code (1996, 2006 Repl.Vol.), § 19–510 of the Insurance Article ("Ins.") that the Waiver be signed by "the first named insured?"

---

**2.** Uninsured motorist benefits cover both motor vehicles that are uninsured and underinsured. *See, e.g., Hoffman v. United Servs. Auto. Ass'n,* 309 Md. 167, 178–79, 522 A.2d 1320 (1987) (explaining that the General Assembly's intent was to make uninsured motorist coverage operate as underinsured motorist coverage); *Aetna Cas. & Sur. Co. v. Souras,* 78 Md.App. 71, 75–76, 552 A.2d 908 (1989) ("Although [this section] refers to 'uninsured motorist' coverage, it is clear that its provisions operate as *underinsured* motorist coverage to the extent that the person responsible for an accident has less liability coverage than the insured under the uninsured provisions of his own policy." (Emphasis in original)). For a discussion of uninsured motorist coverage and underinsured motorist coverage, *see* Andrew Janquitto, *Maryland Motor Vehicle Insurance,* § 8.6 (2008 Supp.).

For the reasons set forth herein, we shall affirm the judgment of the circuit court.

## BACKGROUND

The facts in the case *sub judice* are undisputed, and the parties submitted an "Agreed Statement of Facts" to both the circuit court and to this Court. The Agreed Statement of Facts reads:

1. This case arises out of an automobile accident that occurred on March 8, 2008 in which [Kelly] was injured as a passenger in a vehicle driven by Steven Hedrick. [ ] Hedrick's vehicle was insured by Allstate with bodily injury liability limits in the amount of $50,000 per person. Allstate tendered its limits of $50,000 and, after the uninsured motorist carrier, [ ] Encompass, waived subrogation and consented to the settlement, [Kelly] accepted the policy limits tendered by Allstate.

2. [Kelly] has now filed this Declaratory Judgment action against [ ] Encompass seeking uninsured motorist benefits under a policy of automobile insurance maintained by her parents, Kenneth and Lynne Swartzbaugh (now Sieppe) (the "Policy", attached hereto as Exhibit A). The Policy attached as Exhibit A is a true and accurate copy of the policy in effect at the time of the accident at issue.

3. The questions the Court is asked to address are: (a) whether [Kelly] is entitled to uninsured motorist coverage benefits under the Policy; and, if so, (b) the amount of uninsured motorist coverage available to her in light of a waiver signed by [Kelly's] mother, [Lynne], which limits the amount of uninsured motorists coverage to Maryland's statutory minimum coverage limits of $20,000 each person/$40,000 each accident. The Plaintiffs challenge the validity of the waiver.

4. On or about July 27, 1998, [Lynne] signed the Personal Auto Application (the "Auto Application"), a true and accurate copy of which is attached hereto as Exhibit B, and submitted it to Keller–Stonebraker Insurance, Inc., an inde-

pendent insurance agency ("Keller–Stonebraker"),[3] for the purpose of obtaining private passenger motor vehicle automobile liability insurance for vehicles owned by her and her husband.

5. On September 26, 1998, [Lynne] signed the Universal Security Policy Maryland Supplemental Application, a true and accurate copy of which is attached hereto as Exhibit C, which contains a "Waiver of Increased Limits of Uninsured Motorist Coverage Private Passenger Motor Vehicle Liability Insurance" (the "Waiver"). This Waiver is on the form the Commissioner requires.

6. The Auto Application reflects bodily injury liability limits of $250,000 each person/$500,000 each accident, and uninsured motorist limits of $20,000 each person/$40,000 each accident.

7. At no time prior to the date of the Occurrence at issue (March 8, 2008) did any party withdraw or amend the Waiver.

(Emphasis omitted).

On June 22, 2009, Kelly filed her original complaint in the circuit court for declaratory judgment and other relief against Encompass. On September 24, 2009, Kelly filed an amended complaint to add her parents, Kenneth and Lynne, as plaintiffs. In the amended complaint, the Swartzbaughs asserted that beginning in approximately 1998 and continuing to the present time, Kenneth and Lynne obtained their motor vehicle insurance from Encompass, which included uninsured motorist coverage for Kelly as a resident relative of the named insureds. They alleged that, as a result of the accident, Kelly had incurred medical expenses in excess of $40,000.00, had suffered significant lost wages, and will suffer substantial reduced earnings and wages for the rest of her work life. They claimed that the $50,000.00 tendered by Allstate was "woefully inadequate" to compensate Kelly for the losses and

---

**3.** Although Keller–Stonebraker Insurance, Inc. was the "agent" to the automobile insurance agreement, Encompass "provided" the insurance to the Swartzbaughs.

damages she had sustained as a result of the accident. According to the amended complaint, Encompass maintained that there existed only $20,000.00 in uninsured motorist coverage under the policy issued to Kenneth and Lynne, instead of the $250,000.00 to which the Swartzbaughs were entitled to under the liability coverage.

The Swartzbaughs asserted, however, that Encompass failed to require the **"FIRST** named insured," Kenneth, to execute the Waiver as required by Ins. § 19–510 and thus "Encompass must provide uninsured motorist coverage in an amount equal to the amount of the liability coverage provided under policy, *i.e.,* $250,000.00." They requested that the circuit court, *inter alia:* (1) determine and adjudicate the rights and liabilities of the parties with respect to the subject policy of automobile insurance, (2) find and declare that "the affirmative written waiver" on the policy was invalid, and (3) reform the contract of insurance so as to provide uninsured motorist coverage to Kelly in an amount equal to the amount of the liability coverage.

On March 31, 2010, the parties filed cross motions for summary judgment based on the Agreed Statement of Facts. In an order entered on June 18, 2010, the circuit court denied the Swartzbaughs' motion for summary judgment and granted Encompass's motion for summary judgment. The court explained:

> The Court has been asked to declare whether or not there is any right of recovery on the part of the [Swartzbaughs], and if so, the nature and extent of available potential benefits to [Kelly] from her parents' carrier. **The problem with the case is that [Kelly] seeks to set aside a waiver executed by [Lynne] at the time the original policy of insurance was issued by Encompass to her parents on the grounds that** [Lynne] executed the waiver of any right to obtain any additional uninsured motorist coverage, and that that waiver has never been modified. [Kelly] contends that **[Kenneth] is the first named insured on the policy, and that under [the] applicable statute, the first named insured must waive the uninsured motorist coverage,** and

therefore, notwithstanding the waiver signed by [Lynne], that uninsured motorist coverage benefits exist, and that a recovery is possible from Encompass.

The Court has carefully reviewed all of the legal arguments advanced in this matter, and notes that there is no precise statutory definition of "first named insured" that would be fully dispositive of this issue. By the same token, the Court finds that the waiver executed by [Lynne] some ten (10) years ago, presumably would operate to bar any recovery against Encompass for any uninsured motorist benefits under the facts and circumstances of this case, and that no recovery against Encompass is available as a matter of law or fact.

(Emphasis added).

On the same day, the court entered a declaratory judgment in favor of Encompass and declared:

(1) Kelly [ ] is not entitled to uninsured motorist benefits pursuant to the terms and conditions of the [Swartzbaughs' insurance policy]; (2) The affirmative written waiver signed by Lynne [ ] complies with [Ins.] § 19–510, in form and substance, and is valid and enforceable; (3) The notice required under [Ins.] § 19–510, was provided by Encompass; and (4) The uninsured motorist bodily injury limits under the [Swartzbaughs' insurance policy] are limited to $20,000 per person/$40,000 per accident, such that the vehicle at issue (in which Kelly [ ] was a passenger at the time of the accident) was not an uninsured motor vehicle and Kelly [ ] is not entitled to any uninsured motorist benefits under the [Swartzbaughs' insurance policy].

The Swartzbaughs filed a timely notice of appeal to this Court. Additional facts will be set forth below as necessary to resolve the question presented.

## DISCUSSION

### The Parties' Contentions

The Swartzbaughs argue that the term "first named insured" in Ins. § 19–510 should be "liberally construed" in their

favor because of the statute's remedial nature. According to them, because the term "first named insured" is not defined in Encompass's policy or in the statute, this Court should interpret the term by its plain meaning, *i.e.*, "the insured who is named first in the policy." The Swartzbaughs also assert that, if this Court interprets "first named insured" as synonymous with "named insured," then this Court would be ignoring the word "first," which violates the principle of statutory construction that requires "a statute, if reasonably possible, [ ] to be read so that no word ... is rendered surplusage, superfluous, meaningless, or nugatory." (Quoting *Mgmt. Pers. Servs., Inc. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310 (1984)).

The Swartzbaughs further contend that the parties could not have defined by contract a term in a legislatively enacted statute. In other words, they assert that the parties could not have defined "first named insured" amongst themselves and designated Lynne as the first named insured. They assert that, because Kenneth's name was listed first on the policy, Lynne's signature on the waiver form did not constitute a valid waiver, and thus they have not waived uninsured motorist benefits equal to the amount of liability coverage.[4]

Encompass responds that "first named insured" has not been defined in the Insurance Code or in the insurance policy at issue. Encompass contends that thus "there is no generally accepted definition of 'first-named insured' which this Court should impose upon the parties." With "no generally accepted definition," Encompass relies on general contract principles to argue that the parties are able to designate one of the named insureds as the "first named insured." Encompass concludes

---

4. In addition, the Swartzbaughs argue that "[a]gency is not a defense available to Encompass," because Lynne was acting only in her individual capacity and not on behalf of Kenneth. According to them, the language of Ins. § 19–510 is "clear and unambiguous," granting the authority to waive uninsured motorist benefits equal to the liability coverage to " 'the first named insured' and no one else" and permitting no signatures on waivers by "agents." In light of our decision, we need not address this argument.

that the parties to the contract permissibly identified Lynne as the "first named insured."

## Standard of Review

In *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 769 A.2d 948 (2001), the Court of Appeals provided the following guidelines for interpreting a statute:

> In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention. Legislative intent generally is derived from the words of the statute at issue. We are not constrained, however, by ... the literal or usual meaning of the terms at issue. Furthermore, **we do not read statutory language in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole.**
>
> \*     \*     \*
>
> When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. **We may and often must consider other external manifestations or persuasive evidence,** including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material **that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.**

*Id.* at 549–50, 769 A.2d 948 (first and second alterations in original) (emphasis added) (citations and quotations omitted).

## Analysis

### 1.

### Mandatory Uninsured Motorist Coverage

In 1975, the General Assembly first introduced into law the requirement for mandatory uninsured motorist coverage un-

der Maryland Code (1957, 1979 Repl.Vol.), Article 48A § 541. 1975 Md. Laws, Chap. 562. The stated purpose of the law was to "requir[e] that every motor vehicle liability insurance policy issued after a certain date contain uninsured motorist coverage in certain minimum amounts." *Id.*

Subsection 541(c) addressed uninsured motorist coverage and stated in full:

(c) *Uninsured motorist coverage.*—In addition to any other coverage required by this subtitle, **every policy of motor vehicle liability insurance issued, sold, or delivered** in this State after July 1, 1975 **shall contain coverage,** in at least the amounts required under Title 17 of the Transportation Article, **for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle.** The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A §§ 243H and 243–I. The coverage required under this subsection shall be primary to any right to recover from the Maryland Automobile Insurance Fund pursuant to § 243H of this article.

(Emphasis added).

In 1981, the General Assembly added language to section 541 that required insurance companies make available to the insured *"the opportunity to contract for higher amounts* than

those provided under Title 17 of the Transportation Article," as long as the "amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy." 1981 Md. Laws, Chap. 510 (emphasis added). In 1989, the General Assembly revised section 541 to require insurance companies to offer *in writing* the opportunity to contract for higher amounts of uninsured motorist coverage. 1989 Md. Laws, Chap. 542. Prior to the 1989 amendment, section 541 required only that the insurance company issue the additional coverage upon request and "take[ ] reasonable steps to inform its insureds that such coverage is available to them." *See Libby v. Gov't Emps. Ins. Co.*, 79 Md.App. 717, 726–27, 558 A.2d 1236 (1989).

In 1992, the legislature significantly amended section 541 to require insurance companies to provide uninsured motorist coverage in the same amount as liability coverage *unless waived* by the insured. 1992 Md. Laws, Chap. 641. Delegate Carolyn Krysiak explained the rationale behind the 1992 amendment:

> Maryland law does not go far enough to prevent auto owners from opting for inadequate [uninsured motorist] coverage. Maryland law requires that all auto owners carry [uninsured motorist] coverage at rates of $20,000/$40,000 for bodily injury and $10,000 for property damage. The cost of this mandatory coverage is $10 a year. The law further requires insurance carriers to make higher [uninsured motorist] rates available, up to the policy face value limit. A 1989 law requires insurance carriers to inform policyholders and prospective policyholders in writing that such increased [uninsured motorist] coverage is available and give them the opportunity to obtain it.
>
> Nevertheless, approximately 50% of the State's drivers continue to carry only the 20–40–10 mandatory [uninsured motorist] coverage. The more policyholders I speak with, the more I am convinced that this is because most people are simply unaware of the importance of carrying [uninsured motorist] coverage in the same amount as their basic policy and how little it costs to do so. It costs an additional

$16 on the yearly premium to increase [uninsured motorist] personal injury coverage to $100,000/$300,000 and [uninsured motorist] property damage to $25,000.

&ast;  &ast;  &ast;

In short, the auto owner who carries 100/300 in coverage, but only has 20/40/10 in [uninsured motorist] coverage, has shortchanged his own protection under his own policy. He has protected the other party to an accident to a greater degree than he has protected himself and his family.

... But unfortunately, most people only learn this fact when they have been involved in a serious accident with an uninsured or underinsured motorist ... and then, it's too late.

Hearing Before Economic Matters Committee, H.B. 1039, 1992 Leg., 404th Sess. (Md.1992) (second ellipsis in original).

In sum, the impetus behind the 1992 amendment was the lack of awareness regarding the importance of carrying uninsured motorist coverage in an amount equal to the policy's liability coverage. By requiring the insured to affirmatively waive higher uninsured motorist coverage, an "insured's inaction [wa]s more protection," and the " 'default setting' recognize[d] the realities of life and dovetail[ed] with the legislative aim of [uninsured motorist] coverage—a full recovery." Andrew Janquitto, *Maryland Motor Vehicle Insurance*, § 8.7 (2008 Supp.).

The 1992 amendment was originally introduced as Senate Bill 767 ("S.B. 767"). S.B. 767 required "the amount of uninsured motorist coverage to be equal to the amount of motor vehicle liability coverage in a private passenger motor vehicle liability insurance policy *unless the insured makes a specified waiver of that level of coverage under designated circumstances.*" (Emphasis added). The original draft of S.B. 767 did not use the term "first named insured."

After the Senate passed S.B. 767, the House of Delegates amended the bill to conform with H.B. 1039, the cross filed version of S.B. 767. The House's revision provided that the "first named insured" could reduce the higher limits on the

uninsured motorist coverage "by affirmatively waiving it in a manner that is similar to the PIP [ (personal injury protection) ] waiver." Thus the House specifically amended the language in S.B. 767 to reflect the language in the statute that governed PIP waivers, Maryland Code (1957, 1991 Repl.Vol.), Art. 48A § 539, which required that the "first named insured" waive PIP coverage. No explanation, however, was provided for why the House adopted the PIP language of "first named insured." The Senate thereafter adopted S.B. 767 with the House's amendment. After being signed by the Governor, S.B. 767 became Chapter 641 of the Laws of Maryland 1992 and took effect on October 1, 1992. 1992 Md. Laws, Chap. 641. In sum, the 1992 version of Art. 48A § 541 did not define "first named insured," and the legislative history giving rise to the 1992 amendment did not provide a meaning for "first named insured."

As a result of the 1992 amendment, Article 48A, § 541 read in relevant part:

(g) *Amount of uninsured motorist coverage required; waiver.*—(1) Unless waived by the first named insured under this subsection, the amount of uninsured motorist coverage under a policy of private passenger motor vehicle insurance shall be equal to the amount of liability coverage provided under the policy.

(2) Where the liability insurance coverage under a policy or binder of private passenger motor vehicle insurance is in excess of that required under § 17–103 of the Transportation Article, if the first named insured does not wish to obtain uninsured motorist benefits in the same amount as the liability insurance coverage, the first named insured shall make an affirmative written waiver of having uninsured motorist benefits in the same amount as the liability coverage.

\*       \*       \*

(4) Failure of the first named insured to make an affirmative written waiver under this subsection requires an insurer to provide uninsured motorist coverage in an amount

equal to the amount of the liability coverage, where the liability insurance coverage under a policy or binder of private passenger motor vehicle insurance is in excess of that required under § 17–103 of the Transportation Article.

The statute remained substantively unchanged when Art. 48A § 541(g)(2) & (4) were recodified in 1996 as Ins. § 19–510(b):

(b) *In general.*—(1) **If the first named insured** under a policy or binder of private passenger motor vehicle liability insurance **does not wish to obtain uninsured motorist coverage in the same amount as the liability coverage** provided under the policy or binder, **the first named insured shall make an affirmative written waiver** of having uninsured motorist coverage in the same amount as the liability coverage.

(2) **If the first named insured does not make an affirmative written waiver** under this section, **the insurer shall provide uninsured motorist coverage in an amount equal to the amount of the liability coverage** provided under the policy or binder.

(Emphasis added).

Finding no definition of "first named insured" in the legislative history of Ins. § 19–510, we turn to the PIP statute from which the House borrowed language for its amendment to S.B. 767. Our review of the legislative history regarding the term "first named insured" in the PIP statute, however, does not shed any light on what the General Assembly meant by "first named insured." [5] Therefore, there is nothing in the history

---

**5.** The history of the PIP statute includes a number of proposed, but rejected bills regarding PIP coverage from the Senate and the House until S.B. 170 was adopted as 1989 Md. Laws, Chap. 555. One of the bills that was not adopted, S.B. 637 from 1988, was substantially similar to the adopted PIP statute and utilized the "first named insured" language. Tom Wohlgemuth from State Farm Mutual Automobile Insurance Company proposed an amendment to S.B. 637, which suggested, *inter alia*, that the word "first" be stricken, so that the "named insured," and not the "first named insured," be required to waive the benefits described in the PIP statute. These revisions were

of Ins. § 19–510 that sets forth a particular meaning ascribed by the General Assembly to the term "first named insured," nor states why that term was placed in the statute.[6]

### *"First Named Insured" in Other Jurisdictions*

Finding no ascribed meaning for "first named insured" in Maryland, we turn to our sister jurisdictions. Upon reviewing the uninsured motorist statutes of the other forty-nine states and the District of Columbia, we have discovered that only one jurisdiction, Pennsylvania, utilizes the term "first named insured." Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Cons.Stat. § 1701 *et seq.*, provides that the insurance company must inform the "named insured" that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTEC-
TION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

Signature of **First Named Insured**

_____

Date

75 Pa. Cons.Stat. § 1731 (2011) (emphasis added). Neither the Motor Vehicle Financial Responsibility Law, nor the legis-

_____

characterized as "technical amendments," and the Senate ultimately rejected Wohlgemuth's proposed amendment without explanation.

**6.** We note that the Insurance Article Review Committee commented to the General Assembly that "the meaning of the terms 'insured' and 'first named insured' is not always clear. The General Assembly may want to consider clarifying the meaning of these terms and, where appropriate, conforming usage of the various terms used in [the Motor Vehicle Insurance—Primary Coverage] subtitle for consistency." Md.Code Ann., Insurance § 19–501 *et seq.*, Legislative Notes (West 2011).

lative history of section 1731, however, sets forth a definition of "first named insured." [7]

### Defining First Named Insured

With no guidance from the legislative history of Ins. § 19–510 or similar statutes in other jurisdictions, we are left with only the words of the statute. The General Assembly provided a definition for "named insured" under Ins. § 19–501(d): " 'Named insured' means the person denominated in the declarations in a motor vehicle liability insurance policy." Ins. § 19–510, however, uses the term *"first* named insured." (Emphasis added). The Swartzbaughs contend, and we agree, that we cannot construe the term "first named insured" as synonymous with the term "named insured," for to do so would "erase" the word "first" from the statute. *See Stachowski v. State*, 416 Md. 276, 298, 6 A.3d 907 (2010) ("We construe the [language of a statute] so as to give effect to each word so that no word, clause, sentence or phrase is rendered superfluous or nugatory." (Alteration in original) (quotations omitted)).

The Swartzbaughs argue that "first named insured" must mean "[t]he individual or entity whose name appears first in the declarations of an insurance policy." (Alteration in origi-

---

7. Our research has identified one Pennsylvania case that provided a definition for "first named insured." In *Jones v. Prudential Property & Casualty Insurance Co.*, 856 A.2d 838 (Pa.Super.Ct.2004), the Superior Court of Pennsylvania defined "first named insured" as "the named insured who executes changes with regard to types of coverage on behalf of both insured parties and is listed first on the insurance contract." *Id.* at 841 n. 3. The Court, however, did not cite to any authority for this definition. *Id.* Upon a review of the trial court's decision in *Jones*, we found that the definition of "first named insured" was stated in a letter by Prudential Property & Casualty Insurance Company, which explained to the plaintiffs how to identify who was the first named insured in the insurance policy: "As an example, if the names at the beginning of this letter and on each selection form were ,Jones, John and Mary, it would be John who is the first named insured and who must sign any selection form." Ct. of C.P. of Northhampton Cnty., Pa., Order & Decision Granting J. for Def., Dec. 16, 2002. .Therefore, *Jones* is distinguishable from the case *sub judice* because, unlike in the instant case, the term "first named insured" was defined by the insurance carrier. Accordingly, *Jones* does not provide us with any guidance on the meaning of "first named insured."

nal) (quotations omitted). The word "first," however, has multiple meanings, the Swartzbaughs' definition being only one such meaning. "First" has been defined as "[r]anking above all others, as in importance or quality; foremost." American Heritage Dictionary of the English Language 664 (4th ed.2000). Similarly, "first" has been defined as "before any or some other person or thing (as in time, space, *rank, or importance*)." Webster's Third New International Dictionary 856 (3d ed. 1986) (emphasis added). "First" thus can mean "primary." *See* The Original Roget's International Thesaurus 818.3 (6th ed. 2001). Such definition for "first" was utilized by the National Underwriter Company in its definition of "first named insured":

> An insurance policy may have more than one party named as insured. In such cases, the first named insured attends to policy housekeeping, that is, pays premiums, initiates (or receive[s] notice of) cancellation, or calls for interim changes in the contract. . . .

Michael K. McCracken, *Field Guide for Property & Casualty Agents & Practitioners* 322 (Nat'l Underwriter Co. 2002).

Although not articulated by the General Assembly, the legislature's use of the term "first named insured," in our view, serves a two-fold purpose. First, because most insurance policies have more than one "named insured," a waiver under Ins. § 19–510 need not be signed by all of the named insureds in order to be effective, only the "first named insured" must sign. Second, the term "first named insured" makes it clear that the signature of one particular "named insured," *i.e.,* the "first," makes the waiver effective for the subject policy and thus binding on all other insureds, named or otherwise. *Cf.* Floor Report, S.B. 170, 1989 Leg., 399th Sess. (Md.1989) (explaining that the amendment to the PIP statute "allows the first named insured to waive the coverage for the following persons under the policy: 1) All named insureds; 2) All listed drivers; 3) All members of the first named insured's family that reside in the first named insured's household that are at 16 years old or older.").

■ Therefore, it does not make any difference to the fulfillment of the legislative purpose whether the "first named insured" is the person named first on the declarations page of the insurance policy or is the person who is involved in the securing or maintaining the insurance policy. So long as the parties to an insurance policy designate who is the "first named insured," the signature of that person on a proper waiver form will be sufficient under Ins. § 19–510 to waive uninsured motorist benefits equal to the liability coverage in the subject policy. Such designation can be accomplished, for example, by the insurance company providing a definition of "first named insured" in the policy or by the use of any other document that clearly identifies the "first named insured." Therefore, we hold that the term "first named insured" under Ins. § 19–510 means the person designated as such in a motor vehicle insurance policy or in a document executed as a part of the issuance or renewal of such policy.

■ The above interpretation of Ins. § 19–510 is supported by case law. An insurance policy is a contract between the insurer and the insured, "the benefits and obligations of which are defined by the terms of the policy." *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 165, 702 A.2d 767 (1997). *See also District–Realty Title Ins. Corp. v. Jack Spicer Real Estate, Inc.,* 280 Md. 422, 423, 373 A.2d 952 (1977). "An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Kendall,* 348 Md. at 165, 702 A.2d 767 (quotations omitted). Thus "in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement" as to the terms in the contract. *District–Realty Title Ins. Corp.,* 280 Md. at 429, 373 A.2d 952 (quotations omitted).

■ The Swartzbaughs correctly observe that the uninsured motorist statute is "remedial" legislation and thus should be construed liberally "in order to effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents." *Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721,

737, 436 A.2d 465 (1981) (quoting *State Farm v. Md. Auto. Ins. Fund,* 277 Md. 602, 605, 356 A.2d 560 (1976)) (quotations omitted). In our view, such principle is not applicable to the case *sub judice,* because the Swartzbaughs requested, received, and paid the premiums for uninsured motorist coverage of $20,000 each person/$40,000 each accident for 10 years. If there was no insurance covering the vehicle in which Kelly was a passenger at the time of the accident on March 8, 2008, Encompass would have been obligated to pay the damages sustained by Kelly up to a maximum of $20,000. What the Swartzbaughs are seeking is a construction of the statute, under its "remedial nature," that denies enforcement of the waiver provision, which is specifically provided for in Ins. § 19–510, where such enforcement would result in *less coverage* for an accident victim. We decline to do so.

**2.**

**Application of Ins. § 19–510**

██ As explained *supra,* we interpret Ins. § 19–510 as directing the parties to designate who is the "first named insured" in the insurance policy or in any document executed as a part of that policy. In the instant case, Encompass did not define "first named insured" in the policy, even though it could have done so. We conclude that the parties designated Lynne as the "first named insured" by virtue of the language of the Waiver and Lynne's execution thereof. We explain.

On or about July 27, 1998, Lynne applied for personal automobile insurance for her and Kenneth from Keller–Stonebraker. The Auto Application listed the applicants as "Kenneth & Lynne S. Swartzbaugh," but only Lynne signed the Auto Application.

On September 26, 1998, Lynne signed the Waiver regarding uninsured motorist coverage as a supplement to the Auto Application.[8] The Waiver stated:

---

**8.** The Swartzbaughs do not challenge the substance of the waiver form.

I confirm that I have fully read and understood the attached notice. This is to certify that:

**I am the first named insured/applicant.** I have been offered Uninsured Motorist Coverage in amounts equal to my Personal Liability Coverage limits at a total premium of $204 ... annually. I affirmatively waive this offer and instead elect to purchase lower uninsured motorists limits of $20/$40 (bodily injury) and $10 (property damage), at a total premium of $61 annually, subject to the minimum limits required by Maryland law.

I understand and agree that this waiver shall be construed to be effective as long as I am continuously insured by the CNA Insurance Companies, until I withdraw the waiver in writing.

(Emphasis added). Lynne signed the Waiver on a line under which read: *"Signature of First Named Insured."* (Emphasis added).

Although Kenneth's name was listed first on the Auto Application and, subsequently, on the insurance policy, Lynne represented in writing that she was the "first named insured" by signing the Waiver, which contained the statement "I am the first named insured/applicant," and by placing her signature on the line above the words "Signature of First Named Insured." In other words, it was in her capacity as the first named insured that Lynne agreed to waive uninsured motorist coverage. Moreover, there is no evidence in the record why Kenneth's name was listed first, as opposed to Lynne's name, on the Auto Application or on the policy. Thus the Waiver that was executed as part of the issuance of the Swartzbaughs' policy by Encompass designated Lynne as the "first named insured" for purposes of waiving uninsured motorist benefits equal to the liability coverage, and Lynne waived those uninsured motorist benefits in conformity with Ins. § 19–510 by signing the Waiver as the "first named insured." Accordingly, we hold that the circuit court did not err by ruling that the Waiver was valid and enforceable under Ins. § 19–510.

JUDGMENT OF THE CIRCUIT COURT FOR CAR-
ROLL COUNTY AFFIRMED; APPELLANTS TO PAY
COSTS.