42 A.3d 587

Kelly SWARTZBAUGH, et al.

v.

ENCOMPASS INSURANCE COMPANY OF AMERICA.

No. 100, Sept. Term, 2011.

Court of Appeals of Maryland.

April 25, 2012.

---

Franklin J. Muher (Glusing & Muher, LLC, Baltimore, MD), on brief, for petitioners.

Ronald W. Cox, Jr. (Amy Leete Leone of McCarthy Wilson LLP, Rockville, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

McDONALD, J.

In the motor vehicle insurance law, the phrase "first named insured" makes a cameo appearance, serving only to identify the person who has authority to accept or waive certain types of coverage under a policy. In 1996, when that law was recodified as part of the new Insurance Article of the Maryland Code, the code revisors observed that "the meaning of the terms 'insured' and 'first named insured' is not always clear. The General Assembly may want to consider clarifying the meaning of these terms. . . ." [1] The General Assembly has not yet taken up that suggestion.

The issue that the code revisors foresaw is at the center of this case, which turns on the meaning of "first named insured." We hold that, in the context of a motor vehicle insurance policy, the phrase "first named insured" refers to a person insured under the policy and specifically named in the policy, who acts on behalf of the other insured parties and is designated as such in the policy documents.

### *Motor Vehicle Insurance*

#### *Compulsory Motor Vehicle Insurance*

Since the early 1970s, Maryland's compulsory motor vehicle insurance law has been designed to ensure that "those who own and operate motor vehicles registered in the State are financially able to pay compensation for damages from motor vehicle accidents." *Enterprise Leasing Co. v. Allstate Insurance Co.*, 341 Md. 541, 549, 671 A.2d 509, 514 (1996). That law makes automobile liability insurance a prerequisite to the registration of a motor vehicle. Maryland Code, Transportation Article ("TR"), §§ 17–103, 17–104. The law specifies certain types of coverage that a policy must contain. As a result, policies will generally contain similar or identical provisions in order to comply with Maryland law, although there is no standard automobile insurance policy in Maryland. A.

---

1. Chapter 11, § 1, Laws of Maryland 1996 at 519.

JANQUITTO, MARYLAND MOTOR VEHICLE INSURANCE (3d ed.2011) ("Janquitto"), § 6.6 at 161.

*Required Coverages*

Under the compulsory insurance law, a motor vehicle insurance policy must provide minimum liability coverage of $30,000 per person for personal injuries, up to a total of $60,000 per accident, and $15,000 for property damage. Maryland Code, Insurance Article ("IN"), § 19–504, TR § 17–103(b)(1),(2). The policy must also provide a form of no fault insurance—generally referred to as personal injury protection or "PIP coverage"—to cover medical, hospital, and disability expenses for the insured, family members, guests and authorized users without regard to fault. IN § 19–505; TR § 17–103(b)(3). Finally, pertinent to this case, a policy must provide protection against damages caused by uninsured motorists, sometimes referred to as "UM coverage." IN § 19–509; TR § 17–103(b)(4). It is well-settled that UM coverage includes coverage for accidents involving under-insured, as well as uninsured, motorists. *GEICO v. Comer*, 419 Md. 89, 91 n. 1, 18 A.3d 830 (2011).

*Waivers of PIP and UM Coverage*

With respect to both PIP and UM coverage, State law allows for waivers of the coverage that the law otherwise specifies. In particular, PIP coverage may be waived altogether with respect to named insured individuals and drivers listed in a policy, as well as family members over the age of 16 residing in the household. IN § 19–506(b)(2). The waiver must be in writing on a form devised by the Maryland Insurance Administration ("MIA") that complies with certain statutory standards concerning format and content. IN § 19–506(d). The waiver is to be executed by the "first named insured." IN § 19–506(a). Such a waiver would presumably reduce the cost of the insurance policy. *See MAIF v. Perry*, 356 Md. 668, 675–76, 741 A.2d 1114 (1999) (waiver provision added to statute in light of escalating cost of PIP coverage); IN § 19–506(d)(3)(i) (waiver form to explain cost of coverage).

Under the State insurance code, UM coverage under a motor vehicle insurance policy is by default equal to the liability coverage under the policy. IN §§ 19–509(e)(2), 19–510(b)(2). This level of coverage may be waived, however, in favor of a lesser amount at least equal to the minimum coverage required by the motor vehicle law. IN § 19–510. As with the waiver of PIP coverage, this waiver must be in writing on a form devised by the MIA that complies with certain statutory standards concerning format and content. IN § 19–510(d). The waiver is to be executed by the "first named insured." IN § 19–510(b). Again, the waiver of higher limits of coverage will reduce the premium owed for the policy.

The effectiveness of a waiver of enhanced UM benefits in favor of the minimum amounts required by law is at issue in this case.

### *The Swartzbaugh Case*

The facts are straightforward and not in dispute. This case concerns an insurance policy purchased by Kenneth and Lynne Swartzbaugh and its potential coverage of an accident involving their daughter, Kelly Swartzbaugh.[2] In July 1998, Lynne, who handled the family finances with respect to insurance and related items, applied for insurance coverage for the family with a local independent insurance broker. She ultimately purchased a "package" policy that included both homeowners and motor vehicle insurance with Respondent Encompass Insurance Company.[3] With respect to motor vehicle

---

**2.** Petitioners Kenneth and Lynne Swartzbaugh are now divorced. We understand that Lynne no longer uses the surname "Swartzbaugh" but rather a surname that appears variously in the record as "Seipp" or "Sieppe"; her given name also appears in the record with some variation as "Lynne", "Lynn", "Gale Lynne," and "Gale Lynn."

For clarity, we will refer to the father as "Kenneth," the mother as "Lynne," the daughter as "Kelly"—the first names used in the policy in question—and to all three together as "the Petitioners."

**3.** The policy originally was with CNA Personal Insurance, the predecessor in interest of Encompass.

insurance, the policy provided liability coverage in the amounts of $250,000 per person and up to $500,000 per accident. As later amended, it listed three vehicles, and named Kenneth, Lynne, and Kelly as drivers.

In connection with the automobile policy, Lynne executed a waiver of higher UM coverage on the standard MIA form. The form included a paragraph above the signature line which stated:

This is to certify that:

*I am the first named insured/applicant.* I have been offered Uninsured Motorist Coverage in amounts equal to my Personal Liability Coverage limits at a total premium of $204 annually. I affirmatively waive this offer and instead elect to purchase lower uninsured motorists limits of $20/$40 (bodily injury) and $10 (property damage), at a total premium of $61 annually, subject to the minimum limits required by Maryland law.

(emphasis added).[4] Immediately beneath the signature line appeared the legend: "(Signature of First Named Insured)." The reference to "$20/$40 (bodily injury) and $10 (property damage)" referred to the minimum coverage amounts in effect when the waiver was executed in 1998—$20,000 for personal injuries per person up to $40,000 per accident and $10,000 for property damage [5]—all substantially below the UM coverage that would have prevailed under the policy in the absence of a waiver. By its terms, consistent with Maryland law, the waiver remained in effect until withdrawn. *See* IN § 19-510(e). The waiver was never withdrawn.

In March 2008, Kelly was injured while a passenger in an accident involving an under-insured driver. The driver's in-

---

**4.** The numerical figures were apparently added by the insurance agent, per an instruction on the form.

**5.** The General Assembly subsequently increased the minimum coverage amounts to their current levels. Chapter 441, Laws of Maryland 2010 (raising minimum personal injury liability coverage to $30,000 per person up to $60,000 per accident); Chapter 681, Laws of Maryland 1999 (raising minimum property damage coverage to $15,000).

surer tendered the limits of his policy. Because the higher limits of UM coverage on the Petitioners' own motor vehicle policy had been waived, she was unable to collect further damages from Encompass under that policy's UM coverage. The Petitioners then brought a declaratory judgment action in the Circuit Court for Carroll County, seeking a declaration that the waiver was ineffective on the ground that Lynne was not in fact the "first named insured" on the policy. The circuit court disagreed and ruled that the waiver signed by Lynne was valid and enforceable. The Petitioners appealed to the Court of Special Appeals, which affirmed the circuit court in a reported decision. *Swartzbaugh v. Encompass Ins. Co.,* 201 Md.App. 133, 28 A.3d 785 (2011).

We granted certiorari to decide the significance of the phrase "first named insured" as used in IN § 19–510 and its application to this case.

### *Analysis*

■ Petitioners challenge the effectiveness of Lynne's waiver of enhanced UM coverage. As indicated above, the effectiveness of the waiver turns on whether Lynne was properly considered the "first named insured" with respect to the Petitioners' motor vehicle insurance policy at the time she executed the waiver in 1998.[6] The determination of this question is, in part, a matter of statutory construction—for it is the statute that specifies that the waiver is to be made by the "first named insured." We start with the statutory language, consider its context and history, and assess the proposed constructions.

----

**6.** Even if a waiver is executed by the "first named insured," it is ineffective if the insurer's notice of the effect of the waiver is deficient. IN § 19–510(c); *cf. Nationwide Mutual Ins. Co. v. Powell,* 292 F.3d 201 (4th Cir.2002) (holding that waiver of UM coverage was ineffective under South Carolina law because insurer did not adequately advise insured party about UM coverage). In this case, however, Petitioners apparently do not question the adequacy of the notice provided to Lynne.

*Statutory Language*

The relevant statute provides as follows:

(a) This section applies only when the liability coverage under a policy or binder of private passenger motor vehicle liability insurance exceeds the amount required under § 17–103 of the Transportation Article.

(b)(1) If *the first named insured* under a policy or binder of private passenger motor vehicle liability insurance does not wish to obtain uninsured motorist coverage in the same amount as the liability coverage provided under the policy or binder, *the first named insured shall make an affirmative written waiver* of having uninsured motorist coverage in the same amount as the liability coverage.

(2) If the first named insured does not make an affirmative written waiver under this section, the insurer shall provide uninsured motorist coverage in an amount equal to the amount of the liability coverage provided under the policy or binder.

(c) A waiver made under this section is not effective unless, prior to the waiver, the insurer gives the first named insured written notice of the nature, extent, benefit, and cost of the level of the uninsured motorist coverage being waived.

(d)(1) A waiver made under this section shall be made on the form that the Commissioner requires.

(2) The form may be part of the insurance contract.

(3) The form shall clearly and concisely explain in 10 point boldface type:

(i) the nature, extent, benefit, and cost of the level of the uninsured motorist coverage that would be provided under the policy if not waived by the first named insured;

(ii) that a failure of the first named insured to make a waiver requires an insurer to provide uninsured motorist coverage in an amount equal to the amount of the liability coverage provided under the policy or binder of private passenger motor vehicle liability insurance;

(iii) that an insurer may not refuse to underwrite a person because the person refuses to waive the excess uninsured motorist coverage under the section; and

(iv) that a waiver made under this section must be an affirmative written waiver.

(4) Subject to the Commissioner's approval, a waiver made under this section may be made on the same form as the waiver made under § 19–506 of this subtitle.

(e) A waiver made under this section by a person that is insured continuously by an insurer or by the Maryland Automobile Insurance Fund is effective until the waiver is withdrawn in writing.

(f)(1) An insurer may not refuse to underwrite a person because the person refuses to waive the excess uninsured motorist coverage under this section.

(2) An insurer that violates this subsection is subject to the penalties provided by § § 4–113 and 4–114 of this article.

IN § 19–510 (emphasis added). The phrase "named insured" is defined, for purposes of the motor vehicle insurance law, as "the person denominated in the declarations in a motor vehicle liability insurance policy." IN § 19–501(d). The phrase "first named insured" is not defined in IN § 19–510, nor is it defined elsewhere in the insurance code.

*Statutory Context*

Neither the State motor vehicle law nor the insurance code explicitly requires any particular individuals to be named in, or insured under, a motor vehicle insurance policy, as the law literally requires that vehicles, not specific individuals, be . covered. *See* TR § 17–104(b); IN § 19–504. It is a reasonable inference, however, that a policy would name and cover at least the owner of the vehicle or the individual who routinely drives it. *See* JANQUITTO, § 7.6 at 193 & n. 116. In any event, neither the motor vehicle law nor the insurance code necessarily dictates the identity of the individuals to be insured under a policy, much less designates who should be "first named

insured." Nor does it appear that the Legislature was incorporating a standard industry form in referring to the "first named insured" because, as mentioned earlier, there is no standard automobile insurance policy in Maryland.

A motor vehicle insurance policy also typically covers various classes of individuals who are not specifically named in the policy. For example, some individuals insured under a motor vehicle policy are covered by "omnibus" clauses that describe categories of individuals, such members of the policyholder's family or permissive users of the automobile. JANQUITTO, § 7.7 at 195ff.[7] Thus, it appears likely that the concept of a "named insured," at least in the context of an automobile insurance policy, distinguishes those individuals covered by the policy who are specifically named in the policy, in contrast to those who are covered but only generally described and not named.

*Legislative History*

The legislative history of the waiver provisions for PIP and enhanced UM coverage was thoroughly reviewed by the Court of Special Appeals in its opinion in this case, 201 Md.App. at 143–49, 28 A.3d 785, and we need only briefly summarize it here. When the General Assembly first mandated in 1975 that motor vehicle insurance policies include UM coverage, it required that such coverage be in "at least" the minimum amount of liability coverage required by the compulsory insurance law. Chapter 562, Laws of Maryland 1975. During the 1980s, it amended the statute to require insurers to offer, in writing, higher UM coverage limits up to the amounts of liability coverage provided by the particular policy. Chapter 542, Laws of Maryland 1989; Chapter 510, Laws of Maryland 1981.

There was concern, however, that Maryland drivers were not taking advantage of the higher UM coverage limits that were available. In 1992, the Legislature amended the statute

---

**7.** At one time, policies insured only individuals who were named in the policy; eventually omnibus clauses extended coverage to other described, but unnamed, individuals—hence, the use of the phrase "named insureds." *Bankers & Shippers Ins. Co. v. Lockamy,* 51 Md. App. 1, 4–5, 440 A.2d 421 (1982).

to create a negative option—*i.e.*, a motor vehicle policy would automatically include the higher UM coverage amount unless it was affirmatively waived in writing. Chapter 641, Laws of Maryland 1992. The evident legislative policy was thus to encourage insurance consumers to purchase enhanced UM benefits, but not to mandate the higher benefits and to allow consumers a choice between enhanced benefits and a reduced premium. That choice could be exercised through an affirmative waiver executed in writing, after appropriate disclosures and notices, by the "first named insured."

The 1992 amendment thus introduced the phrase "first named insured" into the statute in requiring that a written affirmative waiver be executed by that individual. No definition of the phrase was included.[8] It appears that the drafters of the statute covering waivers of enhanced UM coverage simply imported the language that already existed for waivers of PIP coverage.[9] Apart from its non-substantive recodification when it was added to the new Insurance Article in 1996,[10] the UM waiver statute is largely unchanged since 1992.

---

8. The phrase "named insured" had been defined in the statute since the first enactment of the compulsory insurance law. Chapter 73, Laws of Maryland 1972. As recounted in the text, the concept of "first named insured" was a later addition.

9. The phrase "first named insured" had been introduced into the PIP statute when the PIP waiver provision was added in 1989. Chapter 555, Laws of Maryland 1989. There may be a purpose in distinguishing the "first named insured" in the PIP waiver provision that does not apply in the context of a waiver of enhanced UM coverage. A waiver of PIP coverage waives PIP benefits in their entirety for each named insured, each listed driver, and certain members of the first named insured's family, regardless of whether the benefits would be provided by the policy in question or any other motor vehicle insurance policy in Maryland. IN § 19–506(b). However, the PIP waiver does not apply to certain individuals who would otherwise be covered by the waiver but are the "first named insured" under another policy for which PIP coverage has not been waived. IN § 19–506(b)(3). This distinction does not appear in the UM coverage waiver statute, in which the waiver is more limited.

10. Chapter 11, Laws of Maryland 1996. Prior to the creation of the Insurance Article, the statute was codified in Maryland Code, Article 48A, § 541(g)-(h).

*Discussion*

■ Petitioners contend that Lynne's waiver of enhanced UM coverage was ineffective because Kenneth's name appears first in a section of their policy labeled "Policyholder" and, thus, in their view, Lynne is not the "first named insured" in the policy.[11] They posit that "first named insured" necessarily refers to the "first person denominated in the declarations in a motor vehicle liability insurance policy." This view treats the phrase analogously to "first born" or "first base"—as one amenable to ready determination by reference to time or space. On the other hand, it is often the case that the appellation "first" is unrelated to time or space, but rather denotes primacy, as used in "first mate" or "first secretary." In the latter sense, "first named insured", rather than first named of the insureds, is the first among the named insureds.

In rejecting the Petitioners' reading of the statute, the Court of Special Appeals adopted the latter view, relying primarily on a dictionary definition and an insurance treatise. It found no evidence in the legislative history that, in requiring the waiver to be made by the "first named insured," the Legislature was expressing a policy choice keyed to name order. Rather, the intermediate appellate court concluded,

---

11. Petitioners also cite cases from other jurisdictions in which courts held that a waiver, in whole or in part, of UM coverage by one family member was ineffective as to another family member. But those cases are readily distinguished in that, unlike IN § 19–510, the relevant statutes did not permit one named insured to act for all in waiving coverage. *See Nationwide Ins. Co. v. Nicholas,* 868 So.2d 457 (Ala.Civ. App.2003) (under Alabama law, written rejection of UM coverage by one named insured does not apply to other named insured on same policy); *Preferred Risk Ins. Co. v. Cooper,* 638 N.W.2d 717 (Iowa 2002) (under Iowa law, wife as well as husband must reject UM coverage on joint policy for waiver to be effective as to wife); *Plaster v. State Farm Mutual Automobile Ins. Co.,* 791 P.2d 813 (Okla.1989) (rejection of UM coverage by husband did not apply to wife because, under Oklahoma statute, written rejection by less than all of the named insureds not considered a complete rejection of UM coverage). The difference from Maryland law is also evident in that, in each of these cases, the court held that the waiver of UM coverage was effective as to the individual who signed it. Under Maryland law, if Lynne is not considered "first named insured," the waiver would not be effective as to her, even though she signed it.

the term was chosen by the drafters to indicate that *not all* named insureds need sign the waiver and to designate a particular insured individual who would act for all. 201 Md. App. at 150–52, 28 A.3d 785. The court concluded that the parties to an insurance policy could designate the "first named insured" in the policy documents, regardless of the order in which insured individuals are listed. *Id.*

Even if one were inclined to adopt the Petitioners' reading of "first named insured" as referring to the order in which names happen to appear, it is not as straightforward a solution as it may seem, as the policy documents in this case illustrate. Three individuals are named in those documents: Kenneth, Lynne, and Kelly, but not always in that order. It is true that, in a space labeled "Policyholder," Kenneth's name appears above Lynne's, though this does not appear to be a complete listing of named insured individuals as Kelly's name does not appear in this section of the policy. All three Petitioners are named as "rated drivers" in several places in the policy, but the order of names differs—Kenneth's name appears first in one instance and Lynne's name appears first in another.

Unlike forms that may be used by other insurers, these policy documents make little use of the phrase "named insured,"[12] much less "first named insured." The one place in the policy documents that expressly uses the phrase "first named insured" is the form for the waiver of enhanced UM coverage. As indicated earlier, Lynne signed this form.

The UM coverage waiver form that Lynne executed was devised by the MIA in compliance with the legislative directive in IN § 19–510(d). It provides insight into that agency's administrative construction of the statute.[13] On that form, the

---

12. The JANQUITTO treatise reproduces model forms developed by the Insurance Services Office, Inc., often referred to as ISO, which some insurers use for motor vehicle policies in Maryland. The model form makes reference to the "named insured" consistent with the statutory definition, but does not refer to a "first named insured." *See* JANQUITTO, Appendix at 1020.

13. Although the Insurance Commissioner has broad authority to adopt regulations concerning insurance generally, and motor vehicle policies

signatory avers that he or she is the "first named insured/applicant" and the line for signature identifies the signatory as the "First Named Insured." This is consistent with the view that the individual who acted for the other insured parties in applying for insurance coverage would presumably be "first named insured" for purposes of a waiver under IN § 19–510, once the policy was issued.[14] Moreover, if one could always identify the first named insured simply by reference to name order, a certification of that status would be unnecessary. The certification on the MIA waiver form thus anticipates the possibility that one who is named later on other policy documents might act for the other insured parties.

We agree with the intermediate appellate court that the use of the phrase "first named insured," at least in the context of motor vehicle insurance, has a notion of primacy. The policy underlying the waiver provision was to allow insurance consumers to make an informed choice between enhanced UM benefits at a higher premium and a lower level of benefits with a correspondingly lower premium. In our view, the named insureds are entitled to determine who will exercise that choice and serve as primary or first named insured. In the absence of a specific designation in the policy documents, the MIA waiver form fills that gap by requiring the individual who executes the form to certify his or her status as "first named insured."

In this case, there is no question that Lynne fits the statutory definition of a "named insured." IN § 19–501(d). Nor is there any question that Lynne was the household member in charge of procuring and making decisions about

---

specifically, IN § § 2–109, 19–503, the MIA has not elaborated on this phrase "first named insured" in regulation.

**14.** The form presumably includes the label "applicant" as well as "first named insured" because an individual might well seek to waive the enhanced UM coverage as part of an initial application for coverage before he or she was actually "insured" under a policy and the MIA presumably did not want to have individuals certifying an insured status that did not yet exist. The statute does not otherwise literally authorize a waiver by an "applicant."

insurance, that she apparently decided to waive the enhanced UM coverage in favor of a lower premium, and that she certified herself to be "first named insured/applicant" in the waiver form.[15] Nor is this a case where there are conflicting definitions or designations of the "first named insured" in the policy documents that might cause us to construe the documents against the drafter. *Cf. U.S. Fidelity & Guaranty Co. v. National Paving & Contracting Co.*, 228 Md. 40, 50, 178 A.2d 872 (1962).

In the Petitioners' view, Lynne's certification on the waiver form should be disregarded in favor of the seemingly arbitrary decision of a clerical employee who types one name ahead of another in the policy documents, presumably following a convention that lists a husband's name first when naming a married couple. Under Petitioners' view, the waiver signed by an applicant like Lynne would be valid if a clerk at Encompass later typed "Lynne and Kenneth" in the space labeled "Policyholder," but invalid if the clerk happened to type "Kenneth and Lynne." This raises the possibility that the waiver might switch on and off if the clerk happened to type the names in a different order in a subsequent policy year. We doubt that the Legislature intended to make the terms of the insurance contract subject to such a happenstance.

### Conclusion

█ In the context of motor vehicle insurance policy, the phrase "first named insured" refers to a person insured under

---

**15.** There is no suggestion that Lynne's execution of the enhanced UM waiver on the MIA form—no doubt influenced by the significant reduction in premium—was the product of fraud or overreaching on the part of Encompass or its agent. Nor is there any suggestion, that there was any disagreement within the household over her decision to waive the higher limits of coverage and lower the family's premium bill. *See Nationwide Mutual Ins. Co. v. Powell*, 292 F.3d 201 (4th Cir.2002) (wife signed form required under South Carolina law rejecting UM coverage for husband's automobile insurance policy, contrary to husband's wishes). It simply appears that the family regrets that decision in light of subsequent events.

the policy and specifically named in the policy who acts on behalf of the other insured parties and is designated as "first named insured" in the policy documents.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE PETITIONERS.**