Kim JONES and Bruce Jones, Wife
and Husband, Appellants

v.

**PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE
COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued March 9, 2004.
Filed July 22, 2004.

Michael A. Snover, Easton, for appellants.

James A. Godin, Philadelphia, for appellee.

Before: BOWES, McCAFFERY and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Kim Jones (Wife) and Bruce Jones (Husband) (collectively Appellants) appeal from the judgment entered in favor of Prudential Property and Casualty Insurance Company (Prudential) on December 12, 2002, in the Court of Common Pleas of Northampton County. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: On May 20, 1999, Appellants commenced a declaratory judgment action against Prudential as a result of Prudential's rejection of Appellants' claim for underinsured motorist (UIM) benefits following an August 16, 1998 motor vehicle accident involving Wife and an underinsured motorist. A non-jury trial was held on July 8, 2002, and, on December 12, 2002, the trial court found in favor of Prudential. Appellants filed timely post-trial motions on December 23, 2002, which the trial court denied on September 5, 2003.[1] Thereafter, on September 25, 2003, Appellants filed a no-

---

1. We note that Appellants' appeal is timely. In equity cases, a party has ten days from a trial court's adjudication to file post-trial motions. See Pa.R.Civ.P. 227.1. Generally, if the trial court fails to rule on the post-trial motions within 120 days, a party may elect to praecipe for the entry of judgment. See Pa. R.Civ.P. 227.4(b). However, the present case is a declaratory judgment action, and the trial court's pronouncement on December 12, 2002, was a "judgment." Therefore, it was unnecessary to praecipe for the entry of judgment in this case. See 42 Pa.C.S.A. § 7532. Nevertheless, in order to render the trial court's December 12, 2002 judgment final for appeal purposes, Appellants had an obligation to file post-trial motions. See Motorists Mutual Ins. Co. v. Pinkerton, 574 Pa. 333, 342, 830 A.2d 958, 963 (2003) (where trial court enters declaratory order after trial, parties must file post-trial motions from that order and post-trial motions must be decided to render order final for appeal purposes). The trial court failed to decide Appellants' post-trial motions within 120 days, but the trial court's delay did not cause Appellants' appeal to be filed out of time. We reach this conclusion because, unlike the criminal rules which require post-sentence motions to be filed within 120 days or be deemed denied by operation of law, the civil rules do not provide a mechanism for post-trial motions to be deemed denied by operation of law after the passage of 120 days. See, e.g., Pa.R.Crim.P. 720(B)(3)(a) (post-sentence motions deemed denied by operation of law if undecided after 120 days); see also Pa.R.Civ.P. 227.4(b)(4). Rather, the civil rules permit, but do not require, a party to praecipe for entry of judgment to move the case forward where the trial court does not decide post-trial motions within 120 days. See Pa.R.Civ.P. 227.4(b)(4). In this case, a praecipe would not be appropriate because, as we have found, "judgment" was already entered. Thus, it is of no moment that the trial court decided Appellants' post-trial motions more than 120 days after the date the post-trial motions were filed.

tice of appeal to this Court. After filing their notice of appeal, Appellants were directed by this Court to file a praecipe to enter judgment. Accordingly, on November 5, 2003, Appellants filed a praecipe for the entry of judgment, and this appeal moved forward.[2]

¶ 3 Prior to Wife's accident, in December 1989, Wife met alone with a Prudential agent and executed an application for insurance coverage for herself and Husband. At trial, Wife asserted that, as the applicant, she understood that she was to be the "first named insured,"[3] but Husband's name appeared above Wife's name on both the application for insurance as "primary driver," and under the designation of "named insured" when Appellants received the insurance policy in February 1990. Thus, it appeared that Husband was the "first named insured." Thereafter, on June 7, 1990, Husband executed two documents rejecting UIM and uninsured motorist (UM) coverage. Husband executed the same two documents on November 17, 1994. Throughout the course of their insurance coverage, Appellants received biannual notices of the limits of their coverage at approximately the same time that Wife paid the premiums of the policies.[4] Since August 1990, the notices of coverage sent to Appellants stated that UIM and UM coverage were "not afforded." Therefore, at the time of Wife's accident, Prudential was not providing UIM or UM benefits to Appellants. Accordingly, following Wife's accident, Prudential denied her UIM claim, and Appellants brought suit requesting the following remedies: (1) for the trial court to declare that UIM/UM coverage existed for Appellants under their insurance policy; (2) to reform the insurance policy to include UIM/UM coverage; and (3) order that the parties be compelled to arbitrate their dispute in accord with the policy as reformed.

¶ 4 On appeal, Appellants present the following issues:

1. Did the trial court err in finding that [Appellants] were estopped from asserting mistake in [Prudential's] designation/changing of the identity of the first name insured from Wife to Husband, and in thereby failing to find that there was a mutual and/or unilateral mistake with Prudential's knowledge, entitling [Appellants] to reformation of the policy to include UIM limits equal to bodily injury limits [where there was no rejection under 75 Pa.C.S.A. § 1731] by the rightful first named insured?

2. Did the trial court err in considering various alleged Prudential mailings as establishing [Appellants'] knowledge of the contents of the mailings where [Prudential] failed to establish a foundation, their relevance and their admissibility for the specific purposes for which the [trial court] relied upon them given that [Appellants had] not agreed that the documentation attached to the discovery responses was ever sent to [Appellants] or read by [Appellants]?

2. We also note, for the reasons cited above, that our direction to Appellants to file a praecipe for the entry of judgment was erroneous. *See* 42 Pa.C.S.A. § 7532; *see also Pinkerton*, at 342, 830 A.2d at 963. Accordingly, we will refer to the December 12, 2002 order as the "judgment" in this case.

3. The "first named insured" is the named insured who executes changes with regard to

types of coverage on behalf of both insured parties and is listed first on the insurance contract.

4. Wife testified that she alone opened the mailings from Prudential, paid the premium bills, and kept the documents mailed from Prudential for one year in her records. *See* N.T. Trial, 7/8/2002, at 31.

3. Did the trial court err in failing to find that, even assuming [Husband was] the first named insured, [Appellants are] entitled to [UIM coverage because the required 75 Pa.C.S.A. § 1731] "Important Notice" was not given to the first named insured but was given to a person other than the person who signed the [UIM] rejection forms?

4. Did the trial court err in failing to find that there was no remedy in a UIM rejection case for a defective "Important Notice?"

Appellants' brief, at 3.

¶ 5 Our review of a trial court's disposition of a declaratory judgment action is governed by the following standard:

[We are] limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

State Automobile Mut. Ins. Co. v. Christie, 802 A.2d 625, 627–28 (Pa.Super.2002) (citations and quotations admitted). Additionally,

we will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

O'Brien v. Nationwide Mut. Ins. Co., 455 Pa.Super. 568, 689 A.2d 254, 257 (1997) (citations omitted).

¶ 6 Appellants argue first the trial court erred in its conclusion that Appellants were estopped from asserting a defense of mistake in the Prudential's designation/changing of the identity of the "first named insured" from Wife to Husband. As such, Appellants contend that the trial court erred because it did not reach the question of whether reformation of the insurance policy would be justified on the basis of mutual mistake. This contention presents a pure question of law, and, therefore, our standard of review is plenary. See, e.g., O'Brien, 689 A.2d at 257.

¶ 7 It is true that when one with an insurable interest, at the time of applying for a policy, advises the agent of the insurance company of the desired coverage and states truthfully to such agent the facts involved in the risk, and the agent, acting within his real or apparent authority and *without actual or constructive knowledge of the applicant,* fails to insert a requested provision, the insurer cannot set up such mistake in avoidance of the policy. *Line Lexington Lumber & Millwork Co. Inc. v. Pennsylvania Pub. Corp.,* 451 Pa. 154, 159, 301 A.2d 684, 687 (1973) (emphasis added). Nevertheless, the record indicates that the aforementioned principle does not apply in the present case. After the insurance application was completed by Prudential's agent, Wife signed the application and returned it to the agent with the provision of Husband's name listed as "principal driver" in the "driver" section of the application. Therefore, if we assume, *in arguendo,* that Wife requested to be in administrative control of the policy, by virtue of signing the contract, Wife had constructive knowledge that the provision requested, *i.e.,* that she would be listed as "principal driver," and, therefore, "first named insured," was not included by Prudential and that, in fact, Prudential's insurance agent listed Husband as "principal driver" on the application form. *See, e.g., Martin v. Atlantic Transport Co.,* 237 Pa. 15, 18, 85 A. 29 (1912) (constructive knowledge is knowledge that person should know reasonably

and, therefore, presumed to know such knowledge).[5]

¶ 8 Upon receipt of the policy in February 1990, Husband's name was listed first under the heading of "named insured." Several months thereafter, on June 7, 1990, Husband executed two documents rejecting UIM/UM coverage. Husband executed the same two documents on November 17, 1994, as the result of a mailing sent November 12, 1994. Husband executed these documents despite the fact that Wife paid the premium bills and kept the documents mailed by Prudential in its biannual mailings in her records. Each mailing listed Husband first under "named insured," and the November 12, 1994 mailing included a letter from Prudential that explained the significance of the "first named insured," i.e., that the "first named insured" was to execute waivers on behalf of both insureds.[6] Nevertheless, Wife testified at trial that she failed to read these documents and was unaware that Husband executed the UIM waivers in 1990 and 1994.

¶ 9 It is well-settled that where the language of an insurance policy is clear and unambiguous, failure to read the policy will not permit an insured to avoid its provisions. See Lambert v. McClure, 407 Pa.Super. 257, 595 A.2d 629, 634 (1991). In the present case, had Wife read the policies that were mailed to her biannually and the explanatory correspondence attached to the mailings, she would have been aware of the variance between the policy-as-written and the policy she desired. However, Wife did not read the policies and mailings at any point, and, therefore, Appellants cannot, after 8 years, charge Prudential with failure to insert a requested provision. See Martin, at 18, 85 A. at 29; cf. Line Lexington Lumber, at 159, 301 A.2d at 687. Therefore, we are satisfied that the trial court did not err when it charged Appellants' with constructive knowledge of Prudential's erroneous listing of Husband as "first named insured" and concluded that Appellants were estopped from raising Prudential's mistake. See Trial court judgment, 12/12/2002, at 5; see also Martin, at 18, 85 A. at 29; cf. Line Lexington Lumber, at 159, 301 A.2d at 687.[7]

¶ 10 Moreover, there is no indication from the record that Wife ever told or communicated to Prudential's agent that she was to administer the insurance policy on behalf of both herself and Husband. The crux of Appellants' argument is that, because Wife met with Prudential's agent alone and applied for the insurance policy without Husband present, Prudential's agent knew that Wife was to exert administrative control over the insurance policy and should have been the "first named insured," or there was an understanding between Wife and Prudential's agent that Wife was to exert control over the policy and, therefore, be "first named insured."

---

5. We note that Husband was listed before Wife as "applicant" on the application form. This designation was incorrect. Wife applied alone for the policy, listed her insurance carrier as "previous insurer," and signed the application without Husband. Thus, we conclude that Wife was the sole "applicant," and she, according to her testimony at trial, applied for the insurance on behalf of both herself and Husband. See N.T. Trial, 7/8/2002, at 15.

6. Appellants challenge the admissibility of the November 12, 1994 mailing. We will discuss its admissibility infra.

7. Our conclusion is buttressed by the fact that the November 12, 1994 mailing explained that only the "first named insured" on the policy could execute waivers of UIM/UM coverage. See November 12, 1994 letter.

¶ 11 It is well-settled law that in order to justify reformation of a contract on the basis of "mutual mistake," evidence of the mistake must be "clear and convincing." *See West Conshohocken Restaurant Assocs. v. Flanigan,* 737 A.2d 1245, 1248 (Pa.Super.1999). The term "clear and convincing evidence," means that that the witnesses must be found to be credible, that the facts to which they have testified are remembered distinctly and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. *See Tapler v. Frey,* 184 Pa.Super. 239, 132 A.2d 890, 893 (1957). Reference to Wife's testimony at the non-jury trial indicates that she was unable to recall the substance of the conversation held with Prudential's agent. Rather, she recalled only that she wanted lower premiums than she had with her previous automobile insurance carrier. Indeed, Wife was unable at trial to recall the Prudential agent's name. Wife offered no evidence, other than her status as applicant, to indicate that she wanted to maintain administrative control over the policy and that Prudential's agent was aware of this fact. Merely because Wife applied for automobile insurance on behalf of herself and Husband does not lead inevitably to the conclusion that she wanted to maintain administrative control over the insurance policy and that Prudential's agent was aware of her intent. *Tapler,* 132 A.2d at 893.

¶ 12 Further, the relevant statutory definitions contained in the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) do not indicate that an "applicant" is to be equated with a "named insured." Rather, an "insured" is defined as "(1) an individual identified by *name* as an insured in a policy of motor vehicle liability insurance; (2) If residing in the household of the named insured: (i) a spouse or other relative of the named insured; or (ii) a minor in the custody of either the named insured or relative of the named insured." *See* 75 Pa.C.S.A. § 1702 (emphasis added). The MVFRL does not provide a separate definition of "applicant," and, therefore, we assign the term "applicant" its plain, ordinary meaning. *See* 1 Pa.C.S.A. § 1903(a). Therefore, Wife's status as "applicant" does not, in and of itself, render her "first named insured." As such, Appellants' claim falls.

¶ 13 Appellants contend next that the trial court erred in considering various alleged Prudential mailings as establishing Appellants' knowledge of the contents of the mailings. Specifically, Appellants contend that the November 12, 1994 mailing from Prudential should not have been admitted by the trial court as evidence establishing Appellants' knowledge of its contents because Prudential did not establish a proper foundation for its admission and Appellants did not stipulate to the admission of the mailing for that purpose. Evidentiary questions are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings on evidentiary questions absent an abuse of that discretion. *Hall v. Jackson,* 788 A.2d 390, 401 (Pa.Super.2001). The record indicates that Appellants stipulated to the entry of the November 12, 1994 mailing without limiting the scope of its admission or raising the argument that they did not receive it. Therefore, Prudential had no need to lay a proper foundation to utilize the document at trial. *See Tyler v. King,* 344 Pa.Super. 78, 496 A.2d 16, 22 (1985). Accordingly, Appellants' argument fails.

¶ 14 Appellants also argue that the trial court cited the November 12, 1994

mailing improperly because there was no proof that Appellants received the mailing. This argument is without merit. Proof of mailing creates a rebuttable presumption of receipt of the mailed item. *Breza v. Don Farr Moving & Storage Co.*, 828 A.2d 1131, 1135 (Pa.Super.2003). At trial, Appellants did not introduce evidence to rebut the presumption that they received the November 12, 1994 mailing. Accordingly, we presume that Appellants received the letter. *Breza*, 828 A.2d at 1135. Accordingly, Appellants' argument fails.

¶ 15 Appellants contend next that even if the trial court was correct in its determination that Husband could waive UIM/UM coverage, such waiver was defective for failure to comply with Section 1731 and 1791, 75 Pa.C.S., of the MVFRL. We disagree. Section 1731, 75 Pa.C.S., states, in pertinent part, the following:

Availability, scope and amount of coverage

(a) MANDATORY OFFERING. No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

(b) UNINSURED MOTORIST COVERAGE. Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The *named insured* shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

Signature of First Named Insured

_____

Date

(emphasis added).

¶ 16 An insurer's duty to inform an insurance applicant of UIM/UM coverage is controlled by Section 1791, 75 Pa.C.S., which states, in pertinent part, the following:

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is *given to the applicant* at the time of application for original coverage, and no other notice or rejection shall be required:

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $ 100,000.

(1.1) Extraordinary medical benefits, from $ 100,000 to $ 1,100,000 which may be offered in increments of $ 100,000.

(2) Income loss benefits, up to at least $ 2,500 per month up to a maximum benefit of at least $ 50,-000.

(3) Accidental death benefits, up to at least $ 25,000.

(4) Funeral benefits, $ 2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $ 177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $ 25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $ 100,000 because of injury to one person in any one accident and up to at least $ 300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least

$ 5,000 for damage to property of others in any one accident. Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

(emphasis added).[8]

¶ 17 Upon review, we are satisfied that Section 1731, 75 Pa.C.S, was not violated. Husband, who we have concluded is estopped from denying his status as "first named insured," signed the appropriate waiver forms. As with their first claim, Appellants contend that because Wife was the "applicant," she was or should have been the "first named insured," and, therefore, Husband's signatures on the UIM/UM waivers were nullities. This argument is without merit. As stated above, merely because Wife was the "applicant" for the insurance policy does not confer on

---

**8.** At the time Wife signed the application in 1989, the last three lines of the statutorily mandated "Important Notice" (notice to potential insured to contact their agent if they do not understand information contained in "Important Notice") were not part of the statutorily-mandated "Important Notice." Therefore, the absence of the last three lines

of the above-cited "Important Notice" in the application that Wife signed is not fatally defective to the "Important Notice" in the present case. See 1 Pa.C.S.A § 1926 (Pennsylvania statues shall not be construed to apply retroactively unless clearly and manifestly so intended by General Assembly).

her the status of "first named insured." *See* 75 Pa.C.S.A. § 1702; *see also* 1 Pa. C.S.A. § 1903(a). Accordingly, we discern no error on the part of the trial court with regard to its application of Section 1731, 75 Pa.C.S.

■ ¶ 18 Next, we consider whether the trial court's application of Section 1791, 75 Pa.C.S., was erroneous. As indicated by the record, Wife was the "applicant" for insurance coverage, and she signed the forms with the Section 1791 notice. Therefore, we discern no error on that basis. *See* 75 Pa.C.S. § 1791 (applicant must sign Section 1791 "Important Notice"). However, the trial court concluded that the Section 1791, 75 Pa.C.S, "Important Notice" on the application was defective because the "Important Notice" was not in bold print and was not in 10–point type. We agree that the face of the application was defective in this regard, but, as the trial court concluded, no remedy exists in the MVFRL for this technical error, and this Court does not possess the authority to create such a remedy. *See Kline v. Old Guard Ins. Co.*, 820 A.2d 783, 788 (Pa.Super.2003). Accordingly, Appellants' claim fails.[9]

¶ 19 As each of Appellants' claims fails, we affirm the judgment of the trial court.

¶ 20 Judgment affirmed.

9. Inasmuch as we have determined that the trial court was correct in its conclusion that no statutory remedy exists for a technical violation of 75 Pa.C.S. § 1791, we need not consider Appellants' fourth claim.