J-A35020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EDWARD P. HASER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CAROLINE HASER, N/K/A CAROLINE JENNER, | |
| Appellant | No. 78 WDA 2015 |

Appeal from the Order December 15, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 11-006647-006

BEFORE: BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                     **FILED JANUARY 20, 2016**

This is an appeal from an order interpreting a consent decree in a matter of equitable distribution. We affirm.

Appellant, Caroline Haser, now known as Caroline Jenner ("Wife") and Appellee, Edward P. Haser ("Husband") were married on March 19, 2005, and separated on August 25, 2010. Husband filed a divorce complaint on March 22, 2011, and Wife filed an answer, counterclaim, and petition raising economic claims. Following lengthy discovery, the parties entered into a consent decree of equitable distribution ("Consent Decree") that resolved the outstanding economic claims. The trial court approved the Consent Decree on May 31, 2013.

The trial court summarized the pertinent history as follows:

Husband is one of the owners of Reinsfelder Inc. [("Reinsfelder")], a trucking company. Wife is the owner of Kuke Lease LLC [("Kuke")], a trailer leasing company. On April 5, 2006, Kuke Lease LLC purchased four 2003 Manac steel flat trailers for $51,560. On April 10, 2006, the parties signed an Equipment Lease in which Kuke Lease LLC, Lessor, leased the four Manac trailers to Reinsfelder, Inc., Lessee. Reinsfelder is to pay $100 per week per trailer, payable every four weeks. Lessor is responsible for the maintenance and repair of the trailers. Paragraph 4 of the Equipment Lease provides as follows:

> 4. The Lessor agrees to deliver to the Lessee the named equipment in good order and condition; maintain the same in good working condition, furnish all necessary oil, fuel, tires, misc. parts and repairs for the operation of said equipment and to pay other expenses incident to such operations.

The parties were unable to agree on provisions in the Consent Decree and Equipment Lease relating to the four trailers. Paragraph 7 of the Consent Decree provides as follows:

> 7. Husband has agreed to purchase the four (4) 2003 Manac flat trailers for the fair market value. Parties will agree upon an appraiser and Husband will pay the costs of the same. Husband will pay Wife within thirty (30) days the fair market value of the trailers as determined by the appraiser. Pending the transfers of the trailers, the lease payments will be made, so long as Wife does not unreasonably withhold her agreement to an appraiser.

When the parties separated, Husband planned to buy the trailers from Wife and he obtained appraisals from two different companies. The first appraisal valued the trailers at $2,750 wholesale and $4,000 retail. The second appraiser valued them at $3,500 wholesale and $6,500 retail. Wife refused to accept either, and suggested that Husband retain Daniel Horgas of Industrial Appraisal Company. Husband contacted Industrial Appraisal Company to make arrangements for the appraisal. Husband became concerned after several conversations with Mr. Horgas that the company did not have the necessary experience and expertise to appraise the trailers. In the interim, the trailers needed repairs to keep them operational. Husband had one

trailer repaired at a cost of $9,544. Due to the high cost of repairs and a concern that Wife would not reimburse him, he did not have the other three repaired. Husband stopped making lease payments after June of 2013.

Wife filed a Petition to Enforce, and on November 7, 2013, the [c]ourt ordered Husband to get an appraisal from Industrial Appraisal Company and to pay Wife $8,000 in back lease payments. Industrial Appraisal placed a value of $29,425 on the four trailers. Husband offered to pay this amount to Wife, less the $9,544 in repair costs. Wife refused and filed a Petition to Enforce Consent Decree. The [c]ourt scheduled an expedited conciliation but was unable to resolve the issue. The [c]ourt set the matter for a hearing on July 23, 2014. The parties were unable to present their evidence in the time allotted and a second day of trial was scheduled for November 24, 2014. On August 25, 2014, Husband presented a Motion requesting that he be permitted to sell the trailers. By that time, they had expired license plates, registrations and needed repairs. The Motion was granted and Husband was permitted to sell the trailers and place the proceeds in escrow. In September of 2014, Husband corresponded with Wife's counsel asking for the titles. Wife changed counsel and Husband filed a Motion for Contempt to get the titles so he could sell the trailers.

At the hearing, Wife contended that Husband was responsible for repairs under the Equipment Lease, and was required to make lease payments under the Consent Decree regardless of their condition. Husband contended that Wife is responsible for keeping the trailers operational under the Equipment Lease and that he should not have to make lease payments after the trailers were no longer roadworthy. Both parties sought counsel fees based on the other's refusal to abide by their agreements. On December 15, 2014, the [c]ourt issued an [o]rder requiring Husband to pay Wife the full-appraised value of the trailers in accordance with the Consent Decree. The [c]ourt found that Wife was responsible for the repairs and that Husband did not have to pay rent for the months that the trailers were not operational. The net result was that Husband owed Wife $23,681. Both requests for attorneys' fees were denied.

Trial Court Opinion, 3/31/15, at 3–5. Wife timely appealed, and Wife and

the trial court both complied with Pa.R.A.P. 1925.

Wife raises the following issues on appeal:

1. Did the Trial Court err in failing to consider and rule upon the parties' Consent Decree of Equitable Distribution that was clear and unambiguous regarding the issue of the trailers and the leasing thereof?

2. Was [W]ife responsible for the maintenance of the trailers and, therefore, the cost for repairs?

3. Should [H]usband be found responsible for making the rental payments for the trailers when he was obligated to pay rent under the Equipment Lease and Consent Decree of Equitable Distribution?

4. Should [W]ife be awarded counsel fees and expenses for successfully enforcing the Consent Decree of Equitable Distribution, which provided for payment of counsel fees and expenses?

Wife's Brief at 4.

"It is well-established that the law of contracts governs marital settlement agreements." *Vaccarello v. Vaccarello*, 757 A.2d 909, 914 (2000) (quoting *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004)); *Stamerro v. Stamerro*, 889 A.2d 1251, 1259–1260 (Pa. Super. 2005)*.* Our courts observe the following principles in reviewing a trial court's interpretation of a marital settlement agreement:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of

- 4 -

discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Kraisinger v. Kraisinger,* 928 A.2d 333, 339 (Pa. Super. 2007) (citation omitted).

We have also reiterated this Court's limited role in interpreting contracts such as property settlement agreements between spouses:

> A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake.
>
> * * *
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.
>
> *Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004) (internal citations omitted) (quoting *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa. Super. 2002)). Further, where . . . the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. *Brosovic v. Nationwide Mut. Ins.*, 841 A.2d 1071 (Pa. Super. 2004).

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004).

Wife first asserts that the trial court incorrectly relied upon and interpreted the Equipment Lease to deduct the cost of repairs Husband made to one trailer and to prematurely end the lease payments for three of the trailers prior to their sale. Wife's Brief at 11. Wife argues that because

paragraph seven of the Consent Decree is unambiguous, it should be interpreted and enforced as a contract without reference to the Equipment Lease. Wife maintains alternatively that even if this Court concludes that the trial court correctly interpreted the Equipment Lease as obligating Wife to make repairs, the evidence shows that the lease "should have been reformed to obligate" Husband to make repairs "under the doctrine of mutual mistake." Wife's Brief at 12. She contends that the trial court should have enforced the unambiguous language of the Consent Decree, "which provided that [Husband] was to purchase the trailers for the value of the appraisal and to continue making lease payments until the purchase occurred." Wife's Brief at 13.

Husband counters that the trial court properly looked to the Equipment Lease in addition to examining the Consent Decree. Husband's argument on this issue essentially is a restatement of the trial court's findings. Husband's Brief at 12–14.

The trial court found the Consent Decree to be clear and unambiguous regarding Husband's obligations with respect to selling the trailers, and it ordered Husband to pay the trailers' full appraised price. We find no error on the part of the trial court in considering the parties' pre-existing Equipment Lease. The Consent Decree did not address, exclude, or alter the Equipment Lease; it merely provided that Husband was to buy the trailers from Wife at the appraised value and pay the Equipment Lease pending the

transfer. In the absence of any specific case law compelling Wife's contention, we reject her suggestion that the trial court was obligated to consider the Consent Decree in a vacuum, without examining the relevant Equipment Lease.

Wife next assails the trial court's finding that Wife, as lessor, was responsible for the maintenance and repairs of the trailers. Wife's Brief at 14. She acknowledges that under the terms of the equipment Lease, the lessor is responsible for repairs, and it was undisputed that Wife did not maintain the trailers. *Id*. Wife argues, however, that the Equipment Lease was created by mutual mistake. *Id*. Wife contends that while it refers to Husband's company, Reinsfelder, as Lessee and Wife's company, Kuke, as Lessor, many of the Equipment Lease's provisions described duties of the Lessor that, in fact, were fulfilled by Husband's company, Reinsfelder, the lessee. Thus, Wife sought reformation of the entire Equipment Lease under the doctrine of mutual mistake, "because the parties committed a mutual mistake as to the terms lessor and lessee in the provisions of the Equipment Lease." *Id*.

Relatedly, Wife contends that paragraph four of the Equipment Lease, which required the "Lessor" to be responsible for all maintenance and repairs, actually referred to Husband. Wife's Brief at 16. Wife acknowledges signing the Equipment Lease with the designations of Kuke as Lessor and Reinsfelder as Lessee. However, she suggests that the actions of the parties

throughout the lease and the wording of the lease itself demonstrate that the parties intended that Husband was the Lessor for the purpose of paragraph four of the Equipment Lease. Therefore, Wife asserts that Husband was responsible for the costs of the repairs. *Id*. at 20.

Husband responds that Wife's argument requires this Court to consider only the Consent Decree and not the parties' pre-existing Equipment Lease, which provided that Wife's company, Kuke, leased the trailers to Husband's company, Reinsfelder, and required Wife, as the Lessor, to maintain the trailers in working order. Husband's Brief at 17. Husband asserts that it was undisputed that Wife did not maintain the trailers. *Id*. Husband contends that the net effect of Wife's position "would have Husband pay the appraised price for the trailers plus all the repair costs and continue to make lease payments on trailers he could not use because Wife did not abide by the terms of the [Equipment] Lease to maintain the trailers. . . ." *Id*.

The trial court noted that Wife acknowledged that under the terms of the Equipment Lease, Lessor is responsible for repairs. Trial Court Opinion, 3/31/15, at 6. Moreover, it stated that Wife did not take issue with the cost or necessity of the repairs. *Id*. The trial court maintained that according to Wife, there is no other way that the Equipment Lease, which refers to the Lessor as "he" throughout, makes sense. Thus, in response to Wife's effort to have the Equipment Lease equitably reformed under the doctrine of mutual mistake, the trial court relied on ***Giant Food Stores, LLC v. THF***

*Silver Spring Development, LP*, 959 A.2d 438 (Pa. Super. 2008), and

*Zurich American Ins. Co. v. O'Hanlon*, 968 A.2d 765 (Pa. Super. 2008).

The trial court held:

> Husband testified that the Equipment Lease was a standard lease used in the industry. The Lease places responsibility on Lessor as owner to keep the equipment in good repair and operational. He acknowledged that **during the marriage** he often paid for repairs without seeking reimbursement from Wife. According to Husband, there was plenty of money available and everything came out of the same pocket, so it made no difference. However, Husband was not mistaken regarding which party was responsible for the repairs under the Equipment Lease. The Court agrees that some of the provisions cited by Wife make more sense if Husband bore the responsibilities attributed to the Lessor. However, paragraph 4[,] which requires the Lessor to deliver the equipment in good working condition[,] is not one of them. Moreover, Wife carefully reviewed the document before signing, as is evident in the changes she made and initialed to Paragraph 3 relating to insurance. Wife failed to meet her burden of coming forward with clear and convincing evidence entitling her to reformation of the Equipment Lease.

Trial Court Opinion, 3/31/15, at 6–7 (emphasis added).

Mutual mistake will afford a basis for reforming a contract. *Zurich*, 968 A.2d at 770. In determining whether a mutual mistake occurred, the court should consider, "the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1108 (Pa. Super. 2006). Mutual mistake exists "only where both parties to a contract are mistaken as to existing facts at the time of execution." *Zurich*, 968 A.2d at 770. To obtain reformation of a contract because of mutual mistake, the moving party is

required to show "the existence of the mutual mistake by evidence that is clear, precise and convincing." *Id*. (citing *Holmes v. Lankenau Hosp.*, 627 A.2d 763, 767–768 (1993) (citations and quotation marks omitted)).

A reformation of a written instrument is a matter of equity. *See Evans v. Marks*, 218 A.2d 802, 805 (Pa. 1966). Courts sitting in equity "have the power to reform a written instrument where there has been a showing of fraud, accident or mistake." *Id*. (citation omitted). Further, "[a] mutual mistake is 1. A mistake in which each party misunderstands the other's intent . . . . 2. A mistake that is shared and relied on by both parties to a contract." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. Super. 2005) (citation and internal quotation marks omitted). "[E]vidence of a mistake must be clear and convincing." *Jones v. Prudential Prop. and Cas. Ins. Co.*, 856 A.2d 838, 844 (Pa. Super. 2004). "It is a well-known general rule that where parties have come to a mutual understanding as to the terms to be embodied in a proposed written contract or conveyance, and the writing executed is at variance with that understanding, it will be reformed to express their intention." *Broida, in Own Right and For Use of Day v. Travelers' Ins. Co.*, 175 A. 492, 493–494 (Pa. 1934) (citations omitted).

We agree with the trial court that some of the provisions cited by Wife "make more sense" if Husband bore the responsibilities attributed to the Lessor. Trial Court Opinion, 3/31/15, at 7. Like the trial court, however, we

- 10 -

conclude that paragraph four, which requires the Lessor to deliver the equipment in good working condition, is not one of them. Significantly, it is clear that Wife carefully reviewed the Equipment Lease, as is evidenced by her alteration of paragraph three. Answer to Defendant's Petition to Enforce Consent Order of Equitable Distribution, Equipment Lease, Exhibit B, at ¶ 3. As Wife failed to meet her burden of providing clear and convincing evidence, **Jones**, 856 A.2d 838, the trial court did not err or abuse its discretion in concluding that Wife is not entitled to reformation of the Equipment Lease.

In issue three, Wife continues her argument that there was a mutual mistake and that Husband, not Wife was obligated to maintain and repair the trailers. Wife's Brief at 21. Thus, she suggests Husband owed $31,600 for rent, not $11,800 as determined by the trial court. **Id**. In the alternative, in the absence of mutual mistake and conceding that she was obligated to repair the trailers, Wife suggests that because Husband paid for repairs before the parties' separation, despite the absence of any obligation for him to do so, the rental cost remained his debt. **Id**. at 22. Wife maintains that assuming she was responsible under both the Equipment Lease and the Consent Decree for repairing the trailers, the trial court erred by ceasing the lease payments prior to Husband providing notice of the defects on October 17, 2013, the date of a letter from Husband's counsel to Wife's counsel describing the trailers' condition. **Id**.

Husband responds that because the trial court found that the provisions of the Equipment Lease were clear and unambiguous, "the question turns on why did the Trial Court allow lease payments from Husband to terminate as of August, 2013 and how is that supported by the facts and law." Husband's Brief at 20. Husband asserts that the trial court correctly determined that Husband proved that Wife did not maintain the trailers in good condition and that three of the trailers were not operational. Husband asserts that the trial court correctly found that Wife's failure to perform under the Equipment Lease was a valid defense to Husband's obligation to make lease payments. He cites **Wayda v. Wayda**,[1] 576 A.2d 1060 (Pa. Super. 1990), for the proposition that the trial court may use equitable distribution to enforce an agreement or otherwise achieve equity in light of an agreement and the spouses' conduct.

In addressing this issue, the trial court noted that according to the Equipment Lease, the Lessor is to deliver the equipment in good order and condition and maintain it in good working condition. Trial Court Opinion, 3/31/15, at 7; Answer to Defendant's Petition to Enforce Consent Order of Equitable Distribution, Equipment Lease, Exhibit B, at ¶ 4. Wife did not maintain the equipment in good working condition. After August of 2013, only one of the trailers was operational. The trial court found that Husband

---

[1] As Wife notes in her reply brief, Husband incorrectly titles this case as **Wayden v. Wayden**. Wife's Reply Brief at 3.

removed the other three trailers out of service because he could not afford the costly repairs and determined that "Husband's obligation to pay rent for the trailers necessarily depended on being able to use them in his trucking business." Trial Court Opinion, 3/31/15, at 7. The record supports this conclusion. N.T., 7/23/14, at 19–22, 51–59, 83–86; N.T., 11/24/14, at 81. Because the trial court agreed that Husband should not be obligated to make payments for trailers that were not usable due to their condition, it held that Husband's obligation was to pay $400 per week through August, and $100 per month thereafter. *Id*. We do not find this conclusion by the trial court was an abuse of discretion or error of law; thus, we reject Wife's claim.

Finally, Wife avers that she sought counsel fees and expenses for her efforts to enforce the Consent Decree pursuant to paragraph seventeen of the Consent Decree.[2] Wife's Brief at 24. She contends that the trial court

_____

[2] Paragraph seventeen provides as follows:

> 17. It is expressly stipulated that if either party fails in the due performance of any of his or her obligations with the exception of unreimbursed medical expenses, under this Agreement, the other party shall have the right, at his or her election, to sue for damages for breach thereof, to sue for specific performance and to seek any other legal remedies as may be available. In the event that such action is resolved in whole or in part in favor of the non-defaulting party, either by Court proceedings or settlement–the defaulting party shall reimburse the non-defaulting party his or her counsel fees, costs and expenses incurred by the non-defaulting party in any such action or proceeding to compel performance hereunder.

*(Footnote Continued Next Page)*

effectively modified the parties' agreement when it refused to award her counsel fees. In support, Wife submits that matters within the divorce code are enforceable as an order of court, citing 23 Pa.C.S. § 3105(a), and she maintains that provisions in such an agreement for counsel fees are not modifiable absent a specific provision to the contrary, citing 23 Pa.C.S. § 3105(c). In addition, Wife cites to **Creeks v. Creeks**, 619 A.2d 754 (Pa. Super. 1993), contending that where a property settlement agreement had a similar provision providing for counsel fees in the event of a breach, this Court reversed the trial court's determination that the parties had not breached their settlement agreement and remanded to the trial court to determine the full amount of counsel fees for the wife's efforts to enforce the agreement, including the cost of the appeal. **Id**. at 757–758.

Wife asserts that the trial court incorrectly relied on 42 Pa.C.S. § 2503(7), which provides for payment of counsel fees as a sanction when a party engages in dilatory, obdurate, or vexatious conduct. Wife suggests instead, that her claim for counsel fees is not related to Husband's conduct

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> Should either party unsuccessfully sue for specific performance or damages for the breach of this Agreement, the party initiating the unsuccessful suit for specific performance or damages for breach of this Agreement shall pay the reasonable legal fees and costs for any services rendered by the attorney representing the party who has successfully defended said action as well as any other attendant expenses relative to said successful defense of said action or proceeding.

Consent Decree, 5/31/13, at ¶ 17.

- 14 -

but to her own efforts to enforce the Consent Decree, and is based solely on paragraph seventeen of the Consent Decree. Wife's Brief at 27. Looking to the plain language of the Agreement, Wife maintains that it provides for counsel fees if enforcement proceedings must be brought, and she argues that she is entitled to counsel fees under the terms of the agreement as the prevailing party. *Id*. (citing *Creeks*, 619 A.2d at 757).

Husband counters that Wife did not file her Petition to Enforce the Marital Settlement Agreement with clean hands. He urges that Wife wanted Husband to continue to make lease payments as well as purchase the trailers, even though Wife caused the trailers "to be in such a state of disrepair that they were not roadworthy—not worthy of continued lease payments." Husband's Brief at 22. In addition, Husband suggests that Wife refused to obey a court order requiring her to deliver the trailer titles to Husband so he could look to recoup his losses.

We agree with the trial court's resolution of this issue. The trial court acknowledged that counsel fees may be awarded as a sanction against another participant for dilatory, obdurate, or vexatious conduct during the pendency of a matter. 42 Pa.C.S. § 2503(7). It held:

> Both parties were equally within their rights, and equally at fault for their inability to settle their differences over the sale and lease of these trailers. The [c]ourt found in favor of Wife on the sale of the trailers, and in favor of Husband on the lease payments. The [c]ourt did not find that either party engaged in dilatory, obdurate, or vexatious conduct during the pendency of the matter.

Trial Court Opinion, 3/31/15, at 8.

Even considering paragraph seventeen of the Consent Decree, in light of the trial court's conclusions that both parties were within their rights and equally at fault, and in light of its findings in favor of Husband and Wife on separate, but intertwined issues, there was no "prevailing party." The trial court's decision to deny counsel fees will be affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2016